IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LAW OFFICE OF MARVIN LUNDY          :          CIVIL ACTION
                                    :
        v.                          :
                                    :
WHITEHAVEN S.F., LLC                :          NO. 10-4544

MEMORANDUM

Dalzell, J.                                October 22, 2010

        Plaintiff Law Office of Marvin Lundy ("Lundy Law")

seeks a permanent injunction against defendant, Whitehaven S.F.,

LLC ("Whitehaven"), from proceeding with an arbitration against

it, as well as costs and attorneys' fees in the amount of $8,750.

For the reasons set forth below, we will grant plaintiff's motion

in part and enjoin the arbitration while declining to award

attorneys' fees or costs.[1]


I.    FACTS

      A.    Anomalous Procedural History

        On September 8, 2010, plaintiff Lundy Law filed a

motion for a preliminary injunction, seeking to prevent

Whitehaven from proceeding with an arbitration against Lundy Law

that was then scheduled to take place in New York City on

September 15, 2010.  What takes Lundy Law's motion out of the

_____

        [1] This memorandum will constitute our Fed. R. Civ. P. 52(a)
findings of fact and conclusions of law.

mine run is that Lundy Law filed it without first bothering to file a complaint, notwithstanding the rigor of Fed. R. Civ. P. 3. That Rule directs that "[a] civil action is commenced by filing a complaint with the court." To be sure, actions to compel arbitration have been commenced on motions to compel, as in Engineers Ass'n v. Sperry Gyroscope Co., 251 F.2d 133 (2d Cir. 1952) (arbitration under § 301 of the Labor Management Relations Act). But we are aware of no case where, as here, a party seeking to enjoin an arbitration did so without complying with Rule 3's straightforward direction.

After informing the parties at the originally scheduled hearing that this matter could not proceed without a complaint, we without objection continued further proceedings until October 19 so plaintiff could comply with Rule 3.[2] At the October 19 hearing, we at last had the benefit of both a complaint and a motion for relief in hand, as well as pretrial memoranda from both parties and a joint stipulation of facts and exhibits.

The parties at the October 19 hearing agreed that we

---

[2] While it seems clear to us, as it did to the Second Circuit in Sperry Gyroscope, that cases seeking (or opposing) arbitration "must be commenced by the filing of a complaint and the service of a summons," id. at 135, Whitehaven took no exception to our pragmatic approach to resolving this odd procedural problem.

could treat the motion for a preliminary injunction as one for a final injunction.  As the parties also agreed that the stipulated facts and exhibits constituted the entire universe of facts in this case, we proceed to a final resolution of this controversy.

B.    Jointly Stipulated Facts

The parties stipulate that Lundy Law represented an unnamed client, K.B., in a case involving a July 21, 2007 motor vehicle accident  On three occasions in 2008, K.B. entered into agreements with Whitehaven.  Pursuant to each agreement, Whitehaven advanced K.B. $2,000 and also charged K.B. an application fee of $250 and an origination fee of $200. Whitehaven also charged K.B. 4.99% interest per month, with a minimum payment of $3,500 due for each agreement.  Three times that year, K.B. also signed a "Plaintiff's Lien in Favor of Whitehaven and Attorney Acknowledgment" ("Plaintiff's Lien"). Lundy Law signed a separate area of the document, titled "Lien Acknowledged and Agreed," at the bottom of the last page of each Plaintiff's Lien, and an employee of Lundy Law notarized K.B.'s signature on the Agreements and Plaintiff's Liens.  Parties' Joint Stip. of Facts & Exhibits ("Facts") (Oct. 6, 2010) at 1.

On May 17, 2010, K.B. settled her personal injury claim

against the third-party tortfeasor for $77,500.  After payment of legal fees and costs and medical provider expenses, Lundy Law tendered the balance of the settlement's net proceeds, $15,009.06, to Whitehaven by a July 28, 2010 check.  That check contained an endorsement stamp stating "Endorsement Constitutes Acceptance in full Satisfaction of outstanding bills".  Whitehaven crossed this stamp out before depositing the check and endorsed it with the notation, "Partial Payment Only, under protest, with prejudice, and with all rights reserved."  Id. at 1-2.

On August 24, 2010, Whitehaven filed a Demand for Arbitration with the American Arbitration Association, with a hearing locale of New York City, against Lundy Law, one of its attorneys, Steven L. Chung, Esq., and K.B.  In response, on September 8, 2010, Lundy Law filed the present Motion for Preliminary Injunction.  The parties have stipulated to remove Chung in his individual capacity from both the New York arbitration proceeding and this case.  Id. at 2.

The parties have stipulated to the admissibility of all relevant exhibits.[3]

_____

[3] Namely, the Plaintiff Agreement, Second Plaintiff Agreement, Third Plaintiff Agreement, Plaintiff's Lien in favor of Whitehaven S.F., LLC and Attorney Acknowledgment notarized on January 7, 2008, Plaintiff's Lien in favor of Whitehaven S.F. LLC

4

In exchange for paying $2,000 to K.B. on each occasion that she signed an agreement with Whitehaven, Whitehaven received a contingent interest in K.B.'s claim. Had K.B. not received any payoff from her claim, she would have owed Whitehaven nothing. See, e.g., Ex. 1 to Exhibits ¶¶ 12, 15. The agreements between K.B. and Whitehaven all state that:

> This AGREEMENT is made and entered into . . . between Whitehaven S.F. LLC, a Delaware Limited Liability Company, having an address at 350 Fifth Avenue, Suite 5701, New York, New York, 10118 (hereinafter referred to as "Whitehaven S.F. LLC") and [K.B.], Philadelphia, PA 19104, (hereinafter referred to as "Plaintiff") and his/her successors and/or assigns.

See, e.g., id. at Preamble. The agreements also provide that:

> Any controversy or claim arising out of or relating to this contract, including without limitation the interpretation, validity, enforceability or breach thereof, shall be settled by final, binding arbitration administered by the American Arbitration Association (hereinafter referred to as "AAA") in accordance with its Commercial Arbitration Rules, and judgment on the

_____

and Attorney Acknowledgment notarized on April 28, 2008, Plaintiff's Lien in favor of Whitehaven S.F., LLC and Attorney Acknowledgment notarized on May 21, 2008, and check dated July 28, 2010 in the amount of $15,009.06. Exhibits to Parties' Joint Stip. of Facts & Exhibits ("Exhibits") (Oct 17, 2010) at 1.

award rendered by the arbitrator may be
entered in any court having jurisdiction
thereof.

See, e.g., id. ¶ 26.  Each Lien that K.B. and Lundy Law

signed provides:

This amount due pursuant to paragraph 5
of the Plaintiff Agreement shall be paid
immediately after reimbursement of your
case preparation costs, payment of your
attorney fees and prior to final
distribution to me as protection of the
monies owed by me under said Plaintiff
Agreement.  I hereby direct my attorney
not to pay me any funds from the
proceeds of my lawsuit(s), claim(s) or
case(s) until Whitehaven S.F. LLC has
been paid in full all sums owed pursuant
to this Agreement and the Plaintiff
Agreement.

See, e.g., Exhibit 4 to Exhibits ¶ 3.  The Liens also state:

I am in receipt of the "Plaintiff
Agreement" and the "Plaintiff Lien in
Favor of Whitehaven S.F. LLC".  These
documents are signed and notarized and
will govern the distribution of the
proceeds.

See, e.g., id. ¶ 7.


C.   Whitehaven's Additional Facts

Whitehaven's Memorandum of Law specifies

additional facts to which the parties did not stipulate.

Whitehaven claims that another entity, Oasis Legal Funding,

extended funds to K.B. in the sum of $1,125 before K.B.

executed her agreements with Whitehaven, and that Whitehaven

advanced $1,125 to Oasis in January 2008 to satisfy Oasis's

lien.  Def.'s Memo. of Law at 9.

Whitehaven's demand for arbitration is founded on

the claim that neither K.B. nor Lundy Law disclosed to

Whitehaven certain preexisting medical liens against K.B. --

in the amount of $72,000, but ultimately compromised for

$30,000 -- to Whitehaven, and that Whitehaven would not have

extended funding to K.B. had it known about those liens.  It

also asserts that Lundy Law "peremptorily" distributed the

proceeds of K.B.'s settlement without consultation with

Whitehaven.  Whitehaven claims that K.B. owed it $80,646.48

at the time the settlement funds were disbursed.  Id. at 8-

9.[4]

---

[4] Thus the amount in controversy in this diversity action --
Lundy Law is a Pennsylvania limited liability partnership based
in the Commonwealth and Whitehaven is a Delaware LLC with its
principal place of business in New York -- exceeds the
jurisdictional threshold.  Lundy Law's Pretrial Memorandum notes
that Whitehaven's Demand for Arbitration seeks damages of
$80,646.48 plus attorney's fees, interest, arbitration costs and
punitive damages.  Pl.'s Pretrial Memo. at 2.

II.  CLAIMS IN THE COMPLAINT AND ANSWER

Lundy Law seeks a declaratory judgment that it is not a party to the agreements entered into between Whitehaven and K.B.  It also asks that Whitehaven be enjoined from proceeding with any arbitration against Lundy Law.  Its complaint and motion also demand attorneys' fees in the amount of $8,400 plus costs of $350.  Compl. at 6.

Lundy Law asserts diversity jurisdiction, which Whitehaven contests, arguing that the amount in controversy is only $13,000.  Whitehaven also denies personal jurisdiction, arguing that it does not transact business in Pennsylvania.  Ans. ¶¶ 3-4.

III. LEGAL ANALYSIS

In ruling on Lundy Law's motion for a permanent injunction -- transformed by agreement from a motion for a preliminary injunction -- we must determine whether "the moving party has demonstrated that: (1) the exercise of jurisdiction is appropriate; (2) the moving party has actually succeeded on the merits of its claim; and (3) the 'balance of equities' favors granting injunctive relief." Chao v. Rothermal, 327 F.3d 223, 228 (3d Cir. 2003).  "In

8

order for harm to warrant a permanent injunction, of course,
the plaintiff must show the lack of an adequate remedy at
law." Int'l Union, United Auto., Aerospace & Agric.
Implement Workers of America v. Mack Trucks, Inc., 820 F.2d
91, 95 (3d Cir. 1987).

A.    Appropriate Exercise of Jurisdiction

        While Whitehaven disputes both subject matter and
personal jurisdiction in this case, we find little merit in
its arguments.  Whitehaven claims that the amount in
controversy in this case is only $13,000, Ans. ¶¶ 3, but as
noted in footnote 4 above, Lundy Law has alleged that
Whitehaven's arbitration demand seeks more than $80,000.
Pl.'s Memo. of Law at 2.  Since "[i]t must appear to a legal
certainty that the claim is really for less than the
jurisdictional amount to justify dismissal," St. Paul
Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938),
Lundy Law's credible allegations preclude a finding of such
certainty here.  We thus have subject matter jurisdiction to
consider Lundy Law's complaint.

        As for personal jurisdiction, even if we were to
concede defendant's dubious claim that we lack general

jurisdiction over Whitehaven because "defendant does not transact business in Pennsylvania, with the exception of accepting, via mail and/or facsimile transmission, applications for case investment agreements from Pennsylvania residents, and signed agreements and other legal writings with respect thereto," Ans. to Compl. ¶ 4, we would still find that we have specific personal jurisdiction.  As our Court of Appeals has explained:

> The inquiry as to whether specific jurisdiction exists has three parts. First, the defendant must have purposefully directed its activities at the forum.  Second, the litigation must arise out of or relate to at least one of those activities.  And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comports with fair play and substantial justice.

O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 317 (3d Cir. 2007) (internal quotations marks, brackets, and citations omitted).  Since Whitehaven knowingly entered into three agreements in Pennsylvania with a Pennsylvania resident and, allegedly, the Pennsylvania law firm representing that resident, and this litigation arises out of these agreements, it would offend neither fair play nor substantial justice to hale Whitehaven into court in

Pennsylvania.  At a minimum, then, we have specific personal jurisdiction over Whitehaven.

B.    Plaintiff's Success on the Merits

The merits of this matter center on whether Lundy Law agreed to an arbitration clause with Whitehaven.  Lundy Law claims that "Plaintiff did not agree to participate in arbitration for any disputes that arose with defendant.  The loan Agreements were entered into between the client and defendant only.  Plaintiff, Law Office of Marvin Lundy, was not a party to those agreements."  Pl.'s Pretrial Memo. at 4.

Whitehaven responds that despite Lundy Law's assertions that it "'never agreed to arbitrate,' . . . the Agreement and Acknowledgment say it did.  [Lundy Law] provides no documentation establishing, for example, that the LundyLaw [sic] firm even attempted to modify the agreement so as to void or alter the arbitration clause.  To the contrary, the firm expressly accepted Ms. Baynard's instruction that it 'adhere to the terms explicitly enumerated in the Agreement.'  Those terms included the arbitration clause."  Defs.' Memo. of Law at 14.  Examining

11

the stipulated agreements more closely in light of controlling authority convinces us that plaintiff has the better of this argument.

The Supreme Court has held that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." <u>United Steelworkers of America v. Warrior & Gulf Nav. Co.</u>, 363 U.S. 574, 582 (1960). Moreover, "the question of arbitrability . . . is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." <u>AT&T Technologies</u>, 475 U.S. at 649 (1986) (citing prior Supreme Court precedent). But "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that 'an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" <u>Id.</u> at 650 (brackets omitted).

"When deciding whether the parties agreed to

arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 944 (1995).  Under Pennsylvania law,[5] "a valid contract requires that: (1) both parties must manifest an intention to be bound by the agreement; (2) the terms of the agreement must be sufficiently definite; and (3) there must be consideration." <u>Hudyka v. Sunoco, Inc.</u>, 474 F. Supp. 2d. 712, 716 (E.D. Pa. 2007) (Savage, J.) (summarizing Pennsylvania authority).  In the special case of agreements to arbitrate, "in Pennsylvania [such agreements] are upheld only where it is clear that the parties have agreed to arbitrate their disputes -- employment and otherwise -- in a clear and unmistakable manner." <u>Id.</u> (citing <u>Quiles v. Financial Exchange Co.</u>, 879 A.2d 281, 287 (Pa. Super. 2005)).

We must determine, then, whether Lundy Law's signature acknowledging Plaintiff's Liens binds it to submit to arbitration because those Liens referenced agreements K.B. signed with Whitehaven that indisputably contained

---

[5] Neither party has suggested any other state's law applies here.

arbitration clauses.  In a somewhat analogous case, our Court of Appeals found a binding arbitration agreement to exist.  In <u>Brennan v. CIGNA Corp.</u>, 282 Fed. Appx. 132, 134 (3d Cir. 2008), a company distributed to its employees a handbook that made clear that "binding arbitration was a term and condition of employment," and then required the employees to sign a form acknowledging receipt and review of the handbook.  Applying Pennsylvania law, the court found that the employees were "subject to a valid and enforceable arbitration policy."  <u>Id.</u> at 136.  <u>Cf.</u> <u>Parker v. Hahnemann University Hosp.</u>, 2001 WL 797247 (D.N.J. 2001) (Simandle, J.) (finding non-existence of arbitration agreement where signed employment offer incorporated, but did not specifically mention, arbitration).

     But the specific circumstances here lead to the opposite conclusion <u>Brennan</u> reached.  The Plaintiff's Liens are entitled "Plaintiff's Lien in Favor of Whitehaven S.F. LLC and Attorney Acknowledgment," suggesting on their face that they consist of two components: a lien K.B. granted and an acknowledgment of that fact by Lundy Law.  The lien portion is written in the first person and takes the perspective of K.B. only.  This portion contains statements

14

such as "I direct my attorney to honor this lien", Ex. 4 to
Exhibits ¶ 6 (emphasis added), using pronouns associated
with a natural person, not a firm.  The supposed
incorporation of the agreements between K.B. and Whitehaven
is found in this part of the document, and is also couched
in the first person: "I am in receipt of the 'Plaintiff
Agreement' and the 'Plaintiff Lien in Favor of Whitehaven
S.F. LLC'.  These documents are signed and notarized and
will govern the distribution of the proceeds." Id. at ¶7
(emphasis added).  The most natural reading of this portion
of the document is that it (1) is written from K.B.'s
perspective only, (2) only binds K.B. to grant a lien to
Whitehaven, and (3) reiterates that K.B. understands and
agrees that the agreements govern distribution.

        In contrast, Lundy Law's acknowledgment appears in
an entirely separate portion of the document.  Following its
lien portion, a line appears showing "AGREED", where only
K.B.'s signature appears.  Lundy Law's signature is further
down the page, following "LIEN ACKNOWLEDGED AND AGREED."
Had the document meant for both K.B. and Lundy Law to be
bound by the lien, it would have been much more natural for
both K.B. and Lundy Law to sign after "AGREED."  The fact

that Lundy Law signed the line after "LIEN ACKNOWLEDGED AND

AGREED" suggests that Lundy Law only acknowledged K.B.'s

grant of a lien to Whitehaven, without binding itself any

further.[6]

Setting aside this line of argument, we also

observe that in Brennan the handbooks distributed to

employees were directly addressed to all of them, so that it

would not have been strange for the employees to sign

acknowledgments that bound each of them to the handbook's

terms.  Here, the agreements supposedly incorporated into

the Plaintiff's Liens, and putatively accepted by Lundy Law,

were originally signed only by K.B. and Whitehaven, and

addressed only those parties.  It would constitute an

unwarranted stretch of the law to allow an agreement between

two parties to bind a third party merely because that party

acknowledged the existence and force of an agreement to

others.

Returning to Hudyka, agreements to arbitrate exist

under Pennsylvania law only where the parties have agreed to

arbitrate their disputes "in a clear and unmistakable

---

[6] It bears noting that Whitehaven created the forms and thus
it is not inequitable to read them against the draftsman.

16

manner." In the end, there was no clear and unmistakable agreement in this case. We therefore find and declare that there was no arbitration agreement between Lundy Law and Whitehaven involving K.B.'s obligations to Whitehaven, and that Lundy Law succeeds on the merits of its claim.

## C.   The Balance of Equities

The parties couched their arguments respecting the balance of equities in terms of "irreparable harm," since they submitted their pretrial memoranda before we (with their agreement) converted the motion for preliminary injunction into one for a final injunction. Under either standard, the plaintiff must demonstrate that the balance of harms tips in its favor, and that the harm it expects to suffer cannot be remedied at law. The parties' arguments regarding irreparable harm, then, assist our inquiry into the balance of equities.

Lundy Law argues that "[i]f Plaintiff is not obligated to arbitrate pursuant to the alleged agreement but is nonetheless compelled to submit to arbitration, Plaintiff will suffer irreparable harm." Pl.'s Pretrial Memo. at 4. Whitehaven responds that "[i]nsofar as the underlying

dispute is about money -- and nothing more -- by its very
definition, the dispute cannot rise to the level of
'irreparable harm.'"  According to Whitehaven, "[i]f
plaintiff's motion is denied, the only harm LundyLaw will
suffer is that it will have to submit discovery and briefs
to the American Arbitration Association in New York, and
ultimately participate in a hearing, either in person or
through videoconferencing.  It is respectfully submitted
that these burdens are not high."  Def.'s Memo. of Law at
16-17.

     We need not tarry long on this point because our
Court of Appeals decided this issue in PaineWebber, Inc. v.
Hartmann, 921 F.2d 507, 515 (3d Cir. 1990): "the harm to a
party would be per se irreparable if a court were to
abdicate its responsibility to determine the scope of an
arbitrator's jurisdiction and, instead, were to compel the
party, who has not agreed to do so, to submit to an
arbitrator's own determination of his authority."[7]  While

---

[7] While Painewebber was overruled in part by the Supreme Court in
Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 85 (2002), the
Supreme Court's decision affected only the Third Circuit's ruling
on whether conditions precedent to an arbitration, such as time
limits, should be decided by a district court.  Painewebber has
continued to be cited for its holding on irreparable injury in

loss of money certainly does not constitute harm

irremediable at law, and being compelled to participate in a

private arbitration ninety minutes away might seem a trivial

matter to a law firm, what a party gives up when it is

compelled to arbitrate in the absence of an agreement is

something entirely different: "A reluctant party has a right

to a judicial determination of his obligation to arbitrate."

Id.  Thus, Lundy Law is entitled to avoid arbitration until

there has been a final determination by a district court as

to the arbitrability of its dispute with Whitehaven.  It

will necessarily experience irremediable harm if it is

compelled to undergo arbitration.

>    For its own part, Whitehaven claims that
>
>> [T]he issuance of a[n] [] injunction <u>would</u>
>> have a deleterious, palpable and large effect
>> on Whitehaven's business.  It would -- for
>> the first time, but surely not the last --
>> put Whitehaven in the position of having to
>> defend itself against petitions for
>> injunctive relief in federal courts in every
>> state where it does business, simply because
>> a law firm doesn't want to honor a contract
>> which they specifically executed,
>> acknowledged, and affirmed.  The issuance of
>> a[n] [] injunction would, quite clearly,
>> create a chilling effect on defendant's

the context of arbitration injunctions.  <u>See</u>, <u>e.g.</u> <u>Sari v. A.M.</u>
<u>Todd Co.</u>, 2009 WL 2526432, at *5 (E.D. Pa. 2009).

19

> business, and upon the practices of other
> entities in its industry.

Defs' Mem. of Law at 17.

This is a strange argument. Whitehaven does not suggest that it will suffer harm <u>in this case</u> from the issuance of an injunction. Instead, it argues that our issuance of a injunction here will chill its business more broadly by placing its contracts in doubt. But this argument would have force only if we were to issue an injunction <u>without basis</u>. Since we have found that Lundy Law did not have a binding arbitration agreement with Whitehaven, our issuing an injunction will help other law firms who have acknowledged liens involving their clients to avoid being forced into arbitrations to which they never agreed. If anything, this would be a salutary result. And it would be a simple matter for Whitehaven to draft future lien and acknowledgment forms to more clearly specify that law firms <u>were</u> committing to arbitration when they sign them. As a result, we do not think that Whitehaven has demonstrated a potential injury outweighing Lundy Law's.

D.    <u>Attorneys' Fees and Costs</u>

We conclude based on the above analysis that Lundy Law is entitled to a permanent injunction preventing Whitehaven from

proceeding with arbitration against Lundy Law relating to K.B.'s

agreements stipulated as exhibits in this case.  Lundy Law has

also asked that an "amount of $8,400.00 ($350 per hour times 24

hours) plus costs of $350.00 be assessed against Defendant for

causing Plaintiff Law Firm to file this complaint and motion for

injunctive relief."  Compl. ¶ 23.

     "In suits to compel one party to submit to arbitration

or abide by an award, fees are generally awarded if the

defaulting party acted without justification, or if the party

resisting arbitration did not have a reasonable chance to

prevail."  <u>Chauffers, Teamsters & Helpers, Local 764 v.</u>

<u>Stroehmann Bros. Co.</u>, 625 F.2d 1092, 1094 (3d Cir. 1980)

(internal quotations and citations omitted).  This teaching

applies to a case like this one where a party seeks to enjoin

binding arbitration.  Because it seems to us that both sides

"entered this litigation in good faith, with a reasonable chance

of success," <u>PKF/Mark III, Inc. v. Metro. Dist. Council of</u>

<u>Phila.</u>, 1993 WL 514705, at *4 (E.D. Pa. 1993) (Kelly, J.), we

decline to award attorneys' fees or costs.

BY THE COURT:

\_\_\s\Stewart Dalzell

21